UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00440-GNS

HIXSA D. COLE                                                                                              PLAINTIFF

v.

MARINER FINANCE, LLC                                                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Compel Arbitration (DN 15). The motion is ripe for adjudication. For the outlined reasons, the motion is **DENIED**.

**I.      SUMMARY OF THE FACTS**

In May 2021, Defendant Mariner Finance, LLC ("Mariner") allegedly mailed a "live check"[1] to Plaintiff Hixsa Cole ("Cole"), which was purportedly a solicitation for a high-interest loan. (Compl. ¶ 12, DN 1-1). Cole says she never received the mailing; instead, she claims someone stole her mail, cashed the check, and left Cole to deal with the consequences. (Compl. ¶¶ 24-28). Cole alleges she notified Mariner that she was a victim of identity theft, including submitting a police report and an identity theft affidavit. (Compl. ¶¶ 32-35). Regardless, Mariner

---

[1] Cole explains that "live checks" are marketing materials for lenders, where a check is mailed to a potential borrower, and, if the recipient wishes to receive the loan (and subsequently be bound to the terms of the loan agreement), they sign the check and deposit it at their bank or at the lender's office. (Compl. ¶ 15 (citation omitted)). Live checks purportedly "involve little underwriting—the lender likely does not know the borrower's financial circumstances beyond his or her credit score range." (Compl. ¶ 15 (internal quotation marks omitted) (quoting Ctr. Responsible Lending et al., CFPB No. 2016-0026, RIN 3170-AA40, *Comment to the CFPB on Request for Info. on Payday Loans, Vehicle Title Loans, Installment Loans and Open-end Lines of Credit* 18 (2016), https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-comment-to-cfpb-rfi-7nov2016.pdf)). Cole claims the Kentucky Consumer Loan Company statutes, KRS 286.4-410 through 286.4-991, do not authorize use of live checks. (Compl. ¶ 18).

allegedly began sending collection letters to Cole and reported false and negative credit information about Cole to major consumer reporting agencies. (Compl. ¶¶ 28-30).

Cole initiated this action in Jefferson Circuit Court, Kentucky, by filing a Complex Consumer Class Action Complaint. (Compl.). Cole, individually and as a potential class, alleged violations of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110 through 367.360. (Compl. ¶¶ 37-66). Mariner removed this matter to the instant Court. (Notice Removal, DN 1). Mariner filed a motion to compel arbitration and seeks an Order dismissing the action without prejudice or staying this action pending arbitration. (Def.'s Mot. Compel Arbitration, DN 15 [hereinafter Def.'s Mot.]). Cole objects and maintains that no arbitration agreement exists. (Pl.'s Resp. Def.'s Mot. Compel Arbitration, DN 16 [hereinafter Pl.'s Resp.]).

## II. JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d).

## III. STANDARD OF REVIEW

To compel arbitration, "a federal court must [first] determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). If an agreement to arbitrate is not "in issue," then arbitration must compelled. *Id.* Inversely, if an agreement is "in issue," the action "must proceed to a trial to resolve the question." *Id.* (citing 9 U.S.C. § 4). Whether an agreement is "in issue" is evaluated under the summary judgment standard set forth in Fed. R. Civ. P. 56(c). *Id.*; *see Nu-X Ventures v. SBL, LLC*, 568 F. Supp. 3d 829, 833 (W.D. Ky. 2021). "[T]he party seeking to enforce an agreement has the burden of establishing its existence, but once prima facie evidence of the agreement has been presented,

the burden shifts to the party seeking to avoid the agreement." *Schnuerle v. Insight Commc'ns., Co. L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (internal quotation marks omitted) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)); *Davis v. Glob. Client Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011) (same). Thereafter, "[t]he party who opposes arbitration must show a 'genuine issue of material fact as to the validity of the agreement to arbitrate' . . . [and] 'has an evidentiary burden of demonstrating that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable.'" *Nu-X Ventures*, 568 F. Supp. 3d at 833 (internal citation omitted) (quoting *Atkins v. CGI Techs. & Sols., Inc.*, 339 F. Supp. 3d 619, 628 (E.D. Ky. 2018)). Notably, challenges to the arbitration clause's formation are decided by the Court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citation omitted).

## IV. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to arbitration clauses in "contract[s] evidencing a transaction involving commerce . . . ." 9 U.S.C. § 2. Such agreements are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract . . . ." *Id.*; *see also Stout*, 228 F.3d at 714; KRS 417.050. The FAA codifies a "liberal federal policy favoring arbitration agreements" and creates a presumption of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Schnuerle*, 376 S.W.3d at 574 ("[I]t has long been the public policy of Kentucky that arbitration is a favored method of dispute resolution."). This presumption, however, only applies to signatories to a contract; courts must "follow neutral state-law rules when deciding whether nonparties may enforce or be bound by an arbitration contract—without suggesting that the outcome should be influenced by any federal policy-laden 'thumb on the scale' favoring or disfavoring arbitration." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021) (citing *Arthur*

*Andersen LLP v. Carlisle*, 556 U.S. 624, 630-32 (2009)). Naturally, "a contract cannot bind a nonparty." *Arthur Andersen*, 556 U.S. at 632 (internal quotation marks omitted) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

Bonnie Klapaska, Mariner's Senior Executive Vice President and Chief Compliance Officer, provided a declaration which confirms Mariner "sent a prescreened firm offer of credit to [Cole] . . . ." (Def.'s Mot. Compel Arbitration Ex. A, at ¶ 4, DN 15-1 [hereinafter Klapaska Decl.]). The declaration contains a copy of the mailing sent to Cole. (Klapaska Decl. Ex. A, DN 15-1). Additionally, a copy of the arbitration agreement terms was included. (Klapaska Decl. Ex. B, DN 15-1 [hereinafter Arbitration Terms]). The relevant terms provide:

> By signing your check, you agree to this Arbitration Agreement ("Agreement") and the terms of the related promissory note ("note"). . . .
>
> **Arbitration Agreement**. You or we may elect to have any Claim (defined below) resolved by neutral binding arbitration instead of in court. You waive any right you have to resolve a Claim between you and us in court. You waive any right you have to participate as a class representative or class member. . . . .
>
> **Claim**. Claim means any claim or dispute, whether arising in law, equity, or otherwise, and regardless of the type of relief sought arising from or relating to your application for credit, the note, the origination, servicing and enforcement of the obligation . . . and any relationship that result from the note, the underlying obligation or any of the foregoing. Claim includes initial claims, counterclaims, cross-claims, and third-party claims. Claim also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation and ordinance. "Claim" does not include any dispute or controversy about the validity, enforceability or scope of this Agreement or any part thereof . . . all such disputes or controversies are for a court and not an arbitrator to decide. Any dispute or controversy that concerns the validity, enforceability or scope of the note as a whole is for the arbitrator, not a court, to decide.

(Arbitration Terms 1).

The FAA aims to "ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 717 (6th Cir. 2014) (internal quotation marks omitted) (quoting *AT&T*

4

*Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)). However, "[a]rbitration under the FAA is contract-driven and principally 'a matter of consent.'" *Id.* (quoting *Waffle House*, 534 U.S. at 294); *see also Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) ("[A]rbitration is a 'matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986))); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 600 (Ky. 2012) ("Arbitration is . . . something the contracting parties . . . must agree to. It is not something that one party may simply impose upon another." (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002))). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (internal quotation marks omitted) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). "Because arbitration agreements are fundamentally contracts," review is governed by "the applicable state law of contract formation." *Seawright*, 507 F.3d at 972 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). Neither party challenges that Kentucky law applies; thus, it is the applicable law. *See AtriCure*, 12 F.4th at 525 (explaining that when parties agree on governing law, courts do not resolve choice-of-law questions).

      A.    **<u>Signature on the Check</u>**

Plainly, Kentucky law directs that a person is not liable for an instrument unless she, or an authorized agent, signs the instrument. KRS 355.3-401(1). Cole alleges she never received the check, and the check was deposited by a third party who stole her mail and forged her signature. (Compl. ¶¶ 24-26). Cole denies that she authorized the third party's actions. Mariner

acknowledges this assertion and does not argue otherwise; Mariner does not allege Cole signed the agreement or that the third party was authorized to deposit the check on her behalf. (Def.'s Mot. 1-3). The Arbitration Terms also undercut Mariner's argument for compelling arbitration, as the terms provide that Cole agreed to the terms "[*b*]*y signing your check* . . . ." (Arbitration Terms 1 (emphasis added)). As Cole, or an authorized agent, did not sign the check, an essential prerequisite to the terms is unfulfilled. Therefore, Mariner has not demonstrated a prima facie showing of a right to arbitrate. *See Schnuerle*, 376 S.W.3d at 575; *Davis*, 765 F. Supp. 2d at 940.

Even if an agreement exists, the Sixth Circuit explained that "[a]n arbitration agreement may be voided for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) (citing 9 U.S.C. § 2; *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003)). Even if Cole were bound to the provision, absent her authorization, the third party's signing would be a forgery. KRS 355.3-403 ("[A]n unauthorized signature is ineffective . . . ."); *see also* KRS 516.030 (forgery in the second degree). When a signature is forged or lacks proper authorization, "it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature . . . ." *Jett v. Standafer*, 137 S.W. 513, 515 (Ky. 1911) (internal quotation marks omitted) (citation omitted); *see also Justice v. Commonwealth*, 281 S.W. 803, 804 (Ky. 1926) ("[A] forged instrument is a mere nullity and therefore can not [sic] ordinarily be the basis of a legal right against the putative maker or any one [sic] else."); *Fed. Land Bank of Louisville v. Hardin-Mapes Coal Corp.*, 817 S.W.2d 225, 227 (Ky. 1991) ("[N]o right passes through a maker's forged instrument to a payee. . . . The forgery of the maker's signature on each check is wholly

6

inoperative as the signature of the maker." (internal citation omitted)). Therefore, if Cole was bound to the agreement, the agreement would nevertheless be void.

      **B.**    <u>**Equitable Enforcement Against a Nonsignatory**</u>

Alternatively, Mariner seeks arbitration under the guise of Cole being "equitably estopped from repudiating the arbitration clause . . . ." (Def.'s Mot. 7 (citation omitted)). The Sixth Circuit has explained that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles" and "[f]ive theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch*, 315 F.3d at 629 (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990); *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *see also GE Energy Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020); *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. App. 2009). Mariner only argues estoppel. (Def.'s Mot. 6-7).

"Generally, in the arbitration context, 'equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory.'" *GE Energy Conversion*, 140 S. Ct. at 1644 (citation omitted); *see AtriCure*, 12 F.4th at 536 (Guy, J., dissenting) ("This court . . . recognized that a nonsignatory may invoke or be bound by an arbitration clause under various theories, including estoppel and agency." (citations omitted)). *Javitch* discussed a Second Circuit case and recounted that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision." *Javitch*, 315 F.3d at 629 (citing *Thomson-CSF*, 64 F.3d at 778-79). After the Supreme Court's decision in *Arthur*

7

*Andersen*, "courts have recognized that they now must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement." *AtriCure*, 12 F.4th at 524 (citations omitted). Thus, examination of Kentucky contract principles is necessary.

Generally, Kentucky courts describe equitable estoppel as "a defensive doctrine founded on the principles of fraud, under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious [or] detrimental way." *Ping*, 376 S.W.3d at 594-95. In a case where the defendant, as a nonsignatory, sought to enforce a warranty provision while simultaneously disavowing the arbitration provision, the Kentucky Court of Appeals found the defendant to be estopped. *Olshan*, 276 S.W.3d at 831. Specifically, the court explained that "[n]onsignatories to a contract containing an arbitration agreement may be bound to the agreement, but only if the nonsignatory receives a direct benefit from the contract." *Id.* (citing *Javitch*, 315 F.3d at 629). As third-party beneficiaries to the contracts, the defendant could not choose "to accept the benefit of the contracts while simultaneously avoiding the dispute resolution mechanism set out in those same contracts." *Id.* at 831-32.

*Olshan* was distinguished from a later case, *Landmark of Iroquois Park Rehabilitation and Nursing Center, LLC v. Gill*, No. 2020-CA-1362-MR, 2022 Ky. App. Unpub. LEXIS 336 (June 17, 2022), as Gill, "the party against whom enforcement [of the arbitration provision was] sought, [was] not 'claiming the direct benefit' of the Arbitration Agreement . . . ." *Id.* at *25. Rather, Gill was "not attempting to enforce the Arbitration Agreement, nor any contract, against the non-signatory defendants; each of his claims sounds in tort, not in contract." *Id.* (citation omitted). Thus, Gill was not equitably estopped from opposing arbitration. *Id.*

Mariner cites to a sister court's analysis, explaining that estoppel may allow a nonsignatory to compel arbitration where the signatory relies upon the terms for claims against a nonsignatory,

8

or where the signatory raises claims of interdependent and concerted misconduct by the nonsignatory and one or more of the signatories. *Hagan v. GreenPoint Credit Corp.*, No. 07-17-KKC, 2007 U.S. Dist. LEXIS 56976, at *20 (E.D. Ky. Aug. 3, 2007) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). This argument is inapplicable as Cole, the nonsignatory, is not attempting to compel arbitration; rather, the circumstances are the opposite. Mariner's argument that "there is no reason why the same reasoning shouldn't also apply to the claims of nonsignatory plaintiffs" is therefore unpersuasive. (Def.'s Reply Mot. Compel Arbitration 3, DN 17).

As noted repeatedly, "[a]rbitration is . . . something the contracting parties . . . must agree to. It is not something that one party may simply impose upon another." *Ping*, 376 S.W.3d at 600 (citing *Howsam*, 537 U.S. at 83). "[I]t is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions . . . ." *Dixon v. Daymar Colls. Grp., LLC*, 483 S.W.3d 332, 346 n.46 (Ky. 2015) (quoting *Hathaway v. Eckerle*, 336 S.W.3d 83, 89-90 (Ky. 2011)). In instances where a nonsignatory attempts to enforce arbitration terms, the signatory is presumed to know the terms and has consented to being bound by them. Conversely, when a signatory attempts to compel arbitration against a nonsignatory, it cannot be presumed the nonsignatory intended to be bound by, or even knew of, the contract terms. Declining to estop Cole does not allow her to take advantage of Mariner; instead, it prevents arbitration from being forced upon a party who did not consent to the terms. *See Ping*, 376 S.W.3d at 594-95; *Seawright*, 507 F.3d at 972.

Mariner chiefly cites to a California state court decision, which remarked, "When that plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be

9

equitably estopped from repudiating the contract's arbitration clause." *JSM Tuscany, LLC v. Super. Ct. of L.A. Cnty.*, 123 Cal. Rptr. 3d 429, 444 (Ct. App. 2011) (citations omitted). Consistent with the *Landmark* case, however, Cole's claim does not sound in breach of contract. (*See* Pl.'s Resp. 5); *Landmark*, 2022 Ky. App. Unpub. LEXIS 336, at *25. Rather, the Complaint alleges that Mariner's practice of sending out unsolicited live check loans as a deceptive practice which is unlawful under KRS 367.170. (Compl. ¶ 41).

In sum, Mariner fails to show prima facie evidence of an arbitration agreement between the parties or equitable grounds to estop Cole from resisting arbitration. *Schnuerle*, 376 S.W.3d at 575; *Davis*, 765 F. Supp. 2d at 940.[2] Therefore, Cole "cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Seawright*, 507 F.3d at 972 (internal quotation marks omitted) (quoting *AT&T Techs.*, 475 U.S. at 648).

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (DN 15) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

November 17, 2022

cc: counsel of record

---

[2] Mariner alleges privity of contract is required between the parties to bring the KCPA claims, framing the argument in two ways: either (1) a valid agreement exists to enforce the Arbitration Terms against Cole, which would satisfy the purported privity requirement under the KCPA, or (2) the Arbitration Terms are not enforceable, given no valid agreement between the parties, and Cole's KCPA claims fail for want of privity. (Def.'s Mot. 6-7 (citations omitted); *see* Compl. ¶¶ 41, 44, 46 (citing KRS 367.170, 367.220)). As detailed above, the Arbitration Terms are not enforceable against Cole. Whether Cole maintains Article III standing to bring the claims, however, is not presently before the Court. *See Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 760 (W.D. Ky. 1998) (discussing standing arguments for claims, including under the KCPA, pursuant to a Fed. R. Civ. P. 12(b)(6) motion).